**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivy Johnson, | No. CV-23-01524-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Ivy Johnson's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 12, 16, 17), and the Court now rules.

## I.    BACKGROUND

The issues presented in this appeal are:

1. Whether the ALJ erred in finding Plaintiff's mental impairments non-severe.

2. Whether the ALJ erred in finding Plaintiff partially credible.

3. Whether the ALJ erred in discounting the assessments of Dr. Salk, Dr. Van Eerd, Dr. Jones, and Dr. Berman.

4. Whether the ALJ violated Plaintiff's due process by failing to rule on an objection to Dr. Brooks' testimony.

5. Whether the Court should remand for immediate computation of benefits.

(*See* Doc. 12 at 1).[1]

### A.    Factual Overview

Plaintiff was fifty-one years old on her alleged disability onset date of July 17, 2011. (Doc. 12 at 2). She has a bachelor's degree in social work and reports past work as an investigator and psychiatric technician. (*Id.* at 3). On February 21, 2012, Plaintiff filed her application for social security disability insurance benefits. (*Id.* at 2). Plaintiff alleged she suffered from hypertension, asthma, adrenal calculus, congestive heart failure, allergic aspergillosis, and adjustment disorder. (*See id.* at 3–6). Plaintiff's claims were denied initially in March 2014, but the SSA Appeals Council remanded the case for the ALJ to reassess the RFC and obtain evidence from a vocational expert. (Doc. 16 at 2). In 2017, the ALJ issued an unfavorable decision which was confirmed by the District Court. (*Id.*) On appeal in 2022, the Ninth Circuit Court of Appeals remanded Plaintiff's case for the SSA to reevaluate the record regarding Plaintiff's cardiac symptoms, the testimony of her treating physician, "and, specifically, to consider evidence regarding Johnson's mental impairments and symptoms." (AR at 1129). In accordance with the Ninth Circuit's Opinion, the District Court remanded the case to the SSA for further proceedings. (AR at 1135). A third ALJ held a telephonic hearing on April 12, 2023. (Doc. 9-1 at 5). The ALJ issued an unfavorable decision on July 26, 2023. (*Id.* at 19). In his decision, the ALJ found that based on Plaintiff's February 21, 2012, social security application, Plaintiff has not been disabled—as defined in the Social Security Act—from February 17, 2011, through the date last insured, December 31, 2016. (*Id.* at 18–19). Plaintiff then sought review in this Court. (Doc. 1).

### B.    The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that

---

[1] The Court has reordered Plaintiff's issues on appeal to facilitate its analysis.

has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C.    The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of February 17, 2011 through her date last insured of December 31, 2016." (Doc. 9-1 at 8).

At step two, the ALJ determined that the following impairment was "severe": cardiac arrhythmia with pacemaker implant. (*Id.*) The ALJ found that Plaintiff's severe impairment "significantly limit[ed] the ability to perform basic work activities." (*Id.*) The ALJ analyzed Plaintiff's claimed mental impairment under the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id.* at 9). He found that Plaintiff's "medically determinable mental impairment of adjustment disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere." (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 11). The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, she can stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. The claimant can frequently climb ramps & stairs, but never climb ladders or scaffolds. The claimant can frequently balance, stoop, kneel, crouch & crawl. The claimant must avoid concentrated exposure to hazards.

(*Id.* at 12).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an investigator, reasoning that "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functioning capacity." (*Id.* at 18). Accordingly, the ALJ found Plaintiff has not been under a disability—as defined in the Social Security Act—from February 17, 2011, through December 31, 2016, the date of last insured. (*Id.*)

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which

1    he did not rely." *Garrison*, 759 F.3d at 1010.

2    **III.   DISCUSSION**

3        **A.    Plaintiff's Mental Impairments and Hypertension Severity**

4        First, Plaintiff argues the ALJ "repeated the exact same error identified in the Ninth

5    Circuit court order." (Doc. 12 at 6). Plaintiff believes the ALJ "abused his discretion by

6    finding Johnson's [mental impairments and] hypertension non severe absent 'new, highly

7    probative' evidence." (*Id.* at 7). Defendant responds that regarding Plaintiff's mental

8    impairments, "the current ALJ in fact conducted a much more thorough analysis; relied on

9    the new testimony of the medical expert, Dr. Brooks; and identified substantial evidence

10   supporting his rejection of opinions from Drs. Salk and Van Eerd." (Doc. 16 at 22).

11       Plaintiff is correct that the Court of Appeals held in this case that an ALJ may not

12   downgrade a disability from severe to non-severe absent "new, highly probative" evidence.

13   *See Johnson v. Kijakazi*, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022)

14   (citing *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)). Thus, in order for the ALJ to

15   have properly downgraded Plaintiff's claims of hypertension and adjustment disorder from

16   severe to non-severe, he must have pointed to some new, highly probative evidence to

17   support his conclusion. *See Johnson*, 2022 WL 1553259 at *1. *But see Ramirez v.

18   Commissioner of Social Security Administration*, CV 22-1151-PHX-JAT (D. Ariz. March

19   13, 2024).

20       As for Plaintiff's mental impairments, the ALJ properly considered the new, highly

21   probative evidence of Dr. Brooks' testimony to support the ALJ's downgrade. (*See* Doc.

22   9-1 at 10–11). Specifically, the ALJ stated:

23       Dr. Brooks reviewed the entire medical record and noted a diagnosis of
         adjustment disorder from a consultative examination in July 2013 (Exhibit
24       B20F). However, he also testified that the record was absent any mental
         health assessments or specific treatment. The consultative examinations in
25       2013 (Exhibits B20F & B21F) noted normal cognitive functioning and she
         had clean and neat grooming and was dressed appropriately. She was
26       cooperative and polite. Her speech was normal and she appeared calm. Her
         thought content and process was normal. Her mood appeared depressed, but
27       her affect was normal. Her understanding, memory, attention and
         concentration were fair (Exhibit 20F/3). Dr. Brooks noted that the claimant's
28

1
2
3
4
5
6

physical treatment records also noted normal affect, no neurological deficits and her cognition was intact (Exhibits 33F, 37F/16, 40F/32). Some records noted no anxiety or depression (Exhibit 34F/8). Upon further questioning, the claimant's diagnosis of adjustment disorder with depression was valid at the time in 2013, but he noted that an adjustment disorder is a mild diagnosis that requires updates and the lack of updates or treatment indicates few if any limitations. Thus, such limitations as noted in Dr. Van Eerd's consultative examination would not be valid after six months.

7
8
9
10
11
12
13
14
15
16

(*Id.*) This further analysis by Dr. Brooks serves as new evidence to support the ALJ's conclusion to downgrade Plaintiff's mental impairment from severe to non-severe. Dr. Brooks' testimony directly addressed the opinion of Dr. Van Eerd and multiple consultative evaluations in 2013. The ALJ combines the new evidence with a number of other reasons to support his conclusion that Plaintiff's condition was non-severe. Although the other evidence could potentially lead to an alternate conclusion, it is the ALJ—not this Court— who is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

17
18
19
20
21
22
23
24
25
26
27
28

The Court now turns to the ALJ's downgrade of Plaintiff's hypertension from severe to non-severe. Unlike the adjustment disorder, the ALJ points to no new, highly probative evidence which would lead the ALJ to conclude Plaintiff's hypertension is non-severe. Thus, the ALJ abused his discretion. However, the Court finds the ALJ's error harmless. Neither ALJ found Plaintiff's combination of impairments met the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See* Doc. 8-3 at 23; Doc. 9-1 at 11). Moreover, upon examining the RFC given by the ALJ, it does not appear that the finding of hypertension to be non-severe led the ALJ to find a less restrictive RFC than the ALJ in 2017, despite less severe impairments. In fact, the more recent ALJ decision found a *more* restrictive RFC than the ALJ in 2017. (*Compare* Doc. 8-3 at 23 *with* Doc. 9-1 at 12). Therefore, the Court finds that the ALJ's error in downgrading the severity of Plaintiff's hypertension was irrelevant to the ALJ's ultimate disability conclusion, and accordingly, harmless. *See Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th

Cir. 2006) ("We have also affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

**B.      Plaintiff's Symptom Testimony**

Plaintiff's next issue on appeal is "[w]hether the ALJ erred in finding Plaintiff partially credible." (Doc. 12 at 1).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

To assess credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Plaintiff testified to the following symptoms:

> In a Disability Report, the claimant alleged that a pacemaker implant, low and high blood pressure and "cardiac" limit her ability to work. (B2E:2) On an average day, the claimant reported resting in bed due to low and high blood pressure. She reported symptoms including chest pain, shortness of breath, dizziness, in which the claimant has to sit or lie down. (B4E:1) The claimant indicated not doing her own grocery shopping and no cleaning, cooking, laundry, yard work or other household chores. (B4E:2) A Disability Report Appeals indicates that the claimant's condition is worsening and she is having a hard time breathing. The report also indicates that the claimant had a pacemaker put in 2011 but she has constant chest pain. In addition, the report notes that the claimant gets dizzy easily and faints often. (B5E:1) During the hearing, the claimant made similar complaints.

(Doc. 9-1 at 12–13).

First, the ALJ found that Plaintiff was not malingering. (Doc. 9-1 at 13). The ALJ then found that Plaintiff had an impairment that could be expected cause some of her symptoms, but he did not fully credit her statements regarding the "intensity, persistence and limiting effects" of her symptoms. (*Id.*) The ALJ offered two reasons for discrediting Plaintiff's symptom testimony: (1) Plaintiff's "allegedly limited daily activities cannot be verified with any reasonable degree of certainty;" and (2) even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence, as discussed herein that shows the claimant generally had normal to mild cardiac findings following pacemaker implantation." (*Id.* at 13).

The ALJ then extensively reviewed Plaintiff's medical records associated with her purported symptoms. In this discussion, the ALJ points to a large amount of medical evidence showing that Plaintiff generally had normal or mild cardiac findings after her

pacemaker was installed. (*See* Doc. 9-1 at 13–14). Addressing Plaintiff's chest pain, the ALJ points to a 2012 appointment with a SSA consultative examiner where Plaintiff complained of "debilitating" chest pain, but the doctor stated that on exam Plaintiff did "very well" and "showed no signs of this 'debilitation' despite currently having chest pain." (*Id.* at 14 (citing AR at 563)). The ALJ also points to an April 2014 assessment where Plaintiff's pacemaker was operating normally and she denied shortness of breath, dizziness, chest discomfort indicative of ischemia.[2] (*Id.* at 14). The ALJ also pointed out that "physical exams [did] not show atrophy or weakness which would be expected for an individual with the claimant's allegedly significant restricted activity." (*Id.*) Although the ALJ supports this finding with citation to one exhibit, he stated "exams" in the plural, which indicates he reviewed and relied on multiple examinations that show no atrophy or weakness. The record supports this conclusion because there are multiple exams in the record that find no atrophy or weakness. (*See, e.g.*, Exh. B33F at 18, 46 (physical exams from 2013 and 2014 with no indication of atrophy or muscle weakness)). Overall, the ALJ specifically identified what contentions in Plaintiff's testimony were not credible and the evidence that undermined those contentions. The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptom testimony to the extent that she claims she was completely debilitated by her symptoms.

## C.    Medical Opinions

Next, Plaintiff argues that the ALJ erred in assigning little to no weight to the opinions of Drs. Salk, Van Eerd, Jones, and Berman. The Court will address each doctor's testimony in turn.

For social security claims filed prior to 2017, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic

---

[2] The ALJ also stated that Plaintiff "denied left sided chest pain," but the Court's review of the record reveals that she did, in fact, complain of left-sided chest pain.

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### i.    Dr. Salk and Dr. Van Eerd

As a preliminary matter, Plaintiff asserts that the ALJ used the wrong standard to evaluate the medical opinion of Dr. Salk and Dr. Van Eerd. (Doc. 12 at 9). If the ALJ decides to not give an examining doctor's opinion controlling weight, the ALJ is required to weigh the treating or examining physician's medical opinion according to a number of factors, including whether the physician's opinion is *supported by and consistent with the record* and *frequency of evaluation*. *See Trevizo*, 871 F.3d at 676; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ stated that "[t]he medical opinions of State agency physician Elliot Salk, Ph.D. and Dr. Van Eerd are given no weight, as their opinions are unsupported and inconsistent with the evidence." (Doc. 9-1 at 15). The ALJ also stated that Plaintiff had a history of minimal mental health treatment which fits under the frequency of examination factor. Thus, the ALJ properly used permissible factors to discount the opinions of the doctors. The doctors' opinions appear to be uncontradicted by other medical doctor testimony and so the ALJ could only reject their opinions by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198.

The ALJ supported his discounting of Dr. Salk and Dr. Van Eerd's opinions with the following reasoning:

> Elliot Salk, PhD found the claimant would be limited to 1 to 2 step tasks on a sustained basis (B4A). Marcel Van Eerd, PsyD opined the claimant appeared capable of managing simple instructions and detailed instructions were fair but at times there appeared to be distractibility, [she] appeared able to manage detailed tasks at times, that her attention and concentration for extended periods appeared reduced with some distractibility, that she presented with slow pace and likely need more than routine rest breaks, could make simple work related decisions, would be unable to complete a workweek due to symptoms of depression, and would at times may be distracted and benefit from repetition of information with changes in work setting, but could respond to normal hazards although at times may be delayed (B20F:6). The overall evidence available at the hearing level does not support finding the claimant requires cognitive limitations in [a] residual functional capacity. At the hearing she described symptoms of difficulty concentrating, needed breaks and lacked motivation[.] However, these

statements are uncorroborated by the record (SSR 16-3p). During her consultative examination, the claimant reported that she can manage her own hygiene, dress and medication [sic], and cook simple meals. (B20F:2). The examiner also found the claimant's understanding and memory appeared fair (Id. at 3). She correctly indicated that six quarters equals $1.50 and that 18-7.5 equaled 10.5. She responded well to informational inquiry, abstract thought for similarities and vocabulary with good response to proverbs and social awareness and social judgment (Id. at 3). The claimant herself has denied memory loss to providers (B29F:11, 19; B33F:43, 46). She did not list cognitive issues from mental impairment in her Disability Report (B2E). During her examination with Dr. Van Eerd she obtained a score of 27/30 on her MMSE, which is not indicative of an individual that requires cognitive limitations in an residual functional capacity. Providers have routinely described the claimant as having intact insight and judgment during her treatment visits (B2F:6; B7F:3; B11F:4, 7, 10, 13, 16, 19; B18F:5, 7; B28F:5, 16, 19, 21, 27, 36, 42, 45, 48, 51, 60, 63, 66; B33F:10, 15, 18). She has been described as being alert, having normal affect and fully oriented (B29F:27, 30, 33, 37, 42, 45; B33F:57, 60, 63, 66, 69). She has stated that she tried to manage symptoms from her adjustment disorder on her own without counseling or medication. The claimant has minimal mental health treatment and has not been hospitalized during the adjudicatory period due to a severe decline in cognitive or social function. She was cooperative with the consultative examiners and she was cooperative, attentive, responsive and did not require redirection at the hearing on her application for benefits.

(Doc. 9-1 at 15). The ALJ points out in the above quotation that specific cognitive testing conducted by Dr. Van Eerd does not support his conclusion that Plaintiff requires cognitive limitation in the calculation of her RFC. He also cites numerous other points in Plaintiff's medical records where other providers have found Plaintiff to have no apparent cognitive limitations. Finally, the ALJ points to the inconsistencies between Plaintiff's own statements about her adjustment disorder and the findings of Drs. Van Eerd and Salk. In sum, the ALJ gave clear and convincing reasons supported by substantial evidence to discount the opinions of Drs. Van Eerd and Salk.

### ii.    Dr. Jones

Plaintiff next argues that the ALJ erred in giving little weight to the medical opinion of Dr. Jones. (Doc. 12 at 10). She asserts that the ALJ "rejected the opinion of Dr. Monte Jones without specific and legitimate reasons." (*Id.*) The ALJ stated that Dr. Jones

diagnosed Plaintiff with cardiac issues, mild pulmonary restriction, dizziness by report, hypertension, hypercholesterolemia, and asthma, making the following observations and findings:

> Blood pressure was 144/88. The claimant was unable to complete pulmonary function testing due to reported chest pain, but she refused Albuterol treatment and would not attempt to finish the test. There otherwise was no evidence of acute respiratory illness or bronchospasm. She had no difficulty maneuvering during the exam, with normal walking, positional changes, heel to tandem walking and squatting, hopping and kneeling. She was cognitively intact. Upper and lower extremity findings were within normal limits, including strength and range of motion, which suggests the claimant is more physically active than alleged. He opined the claimant could lift and carry 10 pounds frequently and 20 pounds occasionally, sit without restriction and stand and walk for 2 hours per 8-hour day, with no climbing ladders, ropes or scaffolds and only occasional climbing ramps and stairs and occasional stooping, kneeling, crouching and crawling. He found for no upper extremity limitations, but with restricted exposure to heights, extreme temperatures, chemicals, dusts, fumes and gases.

(Doc. 9-1 at 17). The ALJ then gave Dr. Jones opinion little weight because

> the evidence of record does not support that the claimant is unable to perform a range of light work. Further, Dr. Jones' proposed restriction of standing and walking 2 hours per 8-hour day is internally inconsistent with his own examination that found the claimant generally functioned normally and had a normal physical presentation.

(*Id.*) Dr. Jones was unable to perform any pulmonary function testing and Plaintiff refused to complete any testing. Thus, Dr. Jones did not have an objective clinical basis for finding pulmonary restriction. Additionally, there was no evidence of respiratory illness and so his asthma diagnosis was based solely on Plaintiff's accounts. This is similar to his other findings and restrictions—they are based on reports by Plaintiff. Since the ALJ discounted Plaintiff's testimony earlier in his opinion, giving little weight to a medical opinion because it is based almost solely off Plaintiff's reports of symptoms is a specific and legitimate reason supported by substantial evidence to reject said medical opinion. The Court finds the ALJ did not err in giving Dr. Jones' opinion little weight.

### iii.   Dr. Berman

Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of her treating

physician, Dr. Berman. (Doc. 12 at 11). Dr. Berman treated Plaintiff in August 2011, two months after her pacemaker implantation. (Doc. 9-1 at 16). According to the ALJ,

> Dr. Berman diagnosed syncope, hypertension, vertigo and bradycardia, status post pacemaker implant in June 2011. He stated that the claimant had not reached maximum medical improvement and he was unsure when she could be expected to return to work. He also stated that job modification would not enable the claimant to work with her impairments. Dr. Berman noted that the claimant's cardiac condition resulted in no limitations (Class I); however, he also opined that the claimant could sit, stand and walk for no more than 1 hour per 8-hour workday, lift and carry up to 20 pounds occasionally, and occasionally bend, climb, push and pull (B2F:1-2).

(*Id.*) The ALJ gave Dr. Berman's opinion little weight because it was "based on the claimant's condition two months post-operatively and is not an opinion based on the claimant's functionality after medical improvement and treatment." (*Id.*) The ALJ then details the mostly normal findings of a series of different doctors and examinations in the two years subsequent to Dr. Berman's diagnosis. The ALJ properly discounted Dr. Berman's opinion by showing how it is inconsistent with the rest of Plaintiff's medical record and was a one-off diagnosis not representative of the totality of Plaintiff's medical condition because she had undergone surgery a mere two months prior. The ALJ properly used factors from 20 C.F.R. § 404.1527(c)(2) and gave specific and legitimate reasons supported by substantial evidence to discount the opinion of Dr. Berman.

### D.    Due Process

Finally, Plaintiff argues that the ALJ erred by failing to inform the medical expert ("ME"), Dr. Brooks, of Plaintiff's "testimony of symptoms and coping with symptoms through prayer." (Doc. 12 at 16). Under the Commissioner's hearings, Appeals and Litigation Law Manual ("HALLEX"), Plaintiff argues, Dr. Brooks' testimony cannot be given substantial weight. Additionally, Plaintiff asserts that Dr. Brooks' testimony conflicts with the criteria in DSM-V for determining how often a patient must follow up for their adjustment disorder diagnosis to be current. (*Id.* at 17).

First, Defendant is correct in stating that HALLEX "does not carry the force of law and is not binding upon the agency." *Roberts v. Comm'r of Soc. Sec. Admin.*, 644 F.3d 931,

933 (quoting *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007)). Like the Ninth Circuit Court of Appeals in *Roberts*, "we do not 'review allegations of non-compliance with its provisions.'" *Id.*

    Second, if Plaintiff had an issue with the testimony of Dr. Brooks and wanted the ALJ to rule on her objection on the record, she should have preserved the issue by raising the objection during the examination of Dr. Brooks or during her cross-examination. Instead, Plaintiff's counsel did not mention any of the purported issues with Dr. Brooks' testimony during Plaintiff's hearing. The ALJ cannot be expected to rule on Plaintiff's objection on the record during proceedings if the issue is not raised during the hearing. The Court assumes the ALJ considered the objection of Plaintiff as it was part of the record and gave weight to Dr. Brooks' testimony despite Plaintiff's concerns. Regardless, Dr. Brooks did not reject Plaintiff's adjustment disorder diagnosis solely because of the lack of a six-month follow-up. As previously discussed, he pointed out a number of issues with Plaintiff's testimony and the opinions of the state consultative examiners. The Court finds there was substantial evidence to support the ALJ's finding that Plaintiff is not disabled as defined by the Social Security Act.

    **E.    Computation of Benefits**

    In light of the Court's foregoing analysis, Plaintiff's request for an immediate award of benefits is moot.

    Accordingly,

    **IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

    Dated this 1st day of April, 2024.

                                                    James A. Teilborg
                                            Senior United States District Judge

- 16 -